UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

TERRI A. JUDGE,

                  Plaintiff,

      V.

COMMISSIONER OF SOCIAL SECURITY,

                  Defendant.

**REPORT AND RECOMMENDATION**

12-CV-482
(GLS/VEB)

---

## I. INTRODUCTION

In July of 2008, Plaintiff Terri A. Judge applied for supplemental security income ("SSI") benefits and disability insurance benefits ("DIB") under the Social Security Act. Plaintiff alleges that she has been unable to work since January of 1990 due to physical and psychological impairments. The Commissioner of Social Security denied Plaintiff's application.

Plaintiff, by and through her attorney, Peter W. Antonowicz, Esq., commenced this action seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

The Honorable Gary L. Sharpe, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 14).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:

Plaintiff applied for benefits on July 30, 2008, alleging disability beginning on January 2, 1990. (T at 125, 126-27).[1] However, by operation of law, the earliest date of disability for purposes of the matter under review is June 5, 2008.[2] The applications were denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on June 29, 2010, in Syracuse, New York, before ALJ Barry E. Ryan. (T at 28). Plaintiff appeared with her attorney and testified. (T at 31-69).

On August 2, 2010, ALJ Ryan issued a written decision finding that Plaintiff was not disabled and was therefore not entitled to benefits. (T at 9-27). The ALJ's decision became the Commissioner's final decision on February 29, 2012, when the Appeals Council denied Plaintiff's request for review. (T at 1-4).

Plaintiff, through counsel, timely commenced this action on March 16, 2012. (Docket No. 1). The Commissioner interposed an Answer on April 30, 2012. (Docket No. 8). Plaintiff filed a supporting Brief on June 14, 2012. (Docket No. 12). The Commissioner filed a Brief in opposition on July 9, 2012. (Docket No. 13).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern

---

[1]Citations to "T" refer to the Administrative Transcript. (Docket No. 10).

[2]Plaintiff was previously determined to be disabled and awarded benefits as of March 16, 1990. In December of 2005, the Commissioner found that Plaintiff's disability ceased as of December 28, 2005. Plaintiff requested a hearing on the issue of disability cessation in January of 2007. (The late filing was excused and the request was considered on the merits). On June 4, 2008, an ALJ found that Plaintiff's disability had ceased as of December 2005. This determination was upheld by the Appeals Council in February of 2010. Plaintiff did not challenge this decision. As such, the earliest Plaintiff can be found disabled in the instant case is June 5, 2008 (the date following the date of the first ALJ's decision). (T at 12). This procedural history, and its legal impact on the instant case, are not in dispute. (Docket No. 12, at p. 2).

District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[3]

For the reasons that follow, it is recommended that the Commissioner's motion be denied, Plaintiff's motion be granted, and this case be remanded for further proceedings.

### III. DISCUSSION

**A.     Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford

---

[3] General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[4]

---

[4]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.     Analysis**

   **1.     Commissioner's Decision**

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2011, and had not engaged in substantial gainful activity since January 2, 1990, the alleged onset date.[5] (T at 15). The ALJ concluded that Plaintiff had the following impairments, as defined under the Act: left ophthalmic artery aneurysm, residuals from a craniotomy for congenital arterial venous malformation with brain hemorrhage; status post left-sided craniotomy and clipping of left ophthalmic aneurysm;

---

> the claimant's severe impairment, he has the residual functional capacity to perform his past work.
>
> Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

[5]Although the ALJ referenced the impact of the prior proceedings as effecting a legal amendment to the alleged onset set (see footnote 2 above), he thereafter referenced January 2, 1990 as the onset date in his decision. This does not appear to have had a material impact on the decision and the parties have not raised this as an issue.

and status post clipping of the aneurysm. (T at 15-18).

However, the ALJ found that Plaintiff's impairments did meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 18). The ALJ determined that Plaintiff retained the residual functional capacity to perform the full range of medium work as defined in 20 CFR 404.1567 (c) and 416.967, without any postural, manipulation, visual, communicative, or environmental limitations. (T at 18-22). The ALJ found that Plaintiff had no past relevant work. (T at 22).

Considering Plaintiff's age (32 on the alleged onset date, 50 years old as of the earliest possible "legal" onset date), education (high school), work experience (no past relevant work), and residual functional capacity (full range of medium work), the ALJ concluded that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 22-23).

Accordingly, the ALJ determined that Plaintiff was not disabled under the Social Security Act as of the date of his decision (August 2, 2010) and was therefore not entitled to benefits. (T at 23). As noted above, the ALJ's decision became the Commissioner's final decision on February 29, 2012, when the Appeals Council denied Plaintiff's request for review. (T at 1-4).

### 2. Plaintiff's Arguments

Plaintiff contends that the Commissioner's decision should be reversed. She offers two (2) principal arguments in support of this position. First, Plaintiff contends that the Commissioner's residual functional capacity determination is not supported by substantial evidence. In particular, Plaintiff argues that the Appeals Council failed to adequately consider new, highly relevant evidence provided by a treating physician that related to

Plaintiff's capabilities. Second, Plaintiff challenges the ALJ's credibility assessment. This Court will address both arguments in turn.

      **a.    RFC**

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making an RFC determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a). An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F. Supp. 180, 183 (N.D.N.Y.1990).

The ALJ found that Plaintiff retained the RFC to perform the full range of medium work. In particular, he concluded that Plaintiff could lift/carry 50 pounds on an occasional basis and 25 pounds on a frequent basis; stand and/or walk for 6 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; and had no postural, manipulative, visual, communicative, or environmental limitations. (T at 18). The ALJ found Plaintiff's daily activities to be "diverse, socially interactive, and performed on a sustained basis" and, thus, inconsistent with her complaints of disabling headaches, depression, and anxiety. (T at 19). The ALJ concluded that Plaintiff's mental health problems were "controlled with medication"

7

and that her mental health was "stable." (T at 19-20).

The ALJ found it significant that the record did not contain any restrictions recommended by a treating doctor with regard to Plaintiff's headaches. (T at 21). The ALJ also supported his decision by referencing the fact that the record did not contain "any opinions from treating or examining physicians indicating that [Plaintiff] is disabled or even has limitations greater than those determined in [his] decision." (T 22).

The ALJ afforded "great weight" to the opinion of Dr. Kalyani Ganesh, a consultative examiner, who opined that Plaintiff had no limitation for sitting, standing, or walking. (T at 285). Dr. Ganesh further found that Plaintiff should avoid "heavy lifting, carrying, pushing, and pulling." (T at 285).

After the ALJ rendered his decision, Plaintiff supplemented the record as part of her request for review by the Appeals Council. In particular, she provided the Appeals Council with an RFC questionnaire completed by Dr. Smitta Kattur, a treating physician, on March 18, 2011.

In that report, Dr. Kattur noted that Plaintiff suffered from daily headaches of a "dully, achy" nature (with an intensity of 3 out of 10), lasting 1 to 4 hours. (T at 456-57). Dr. Kattur reported that Plaintiff experienced vertigo, visual disturbances, nausea, malaise, photosensitivity, and an inability to concentrate as a result of her headaches. (T at 457). The headaches were triggered by bright lights, lack of sleep, stress, vigorous exercise, and weather changes. (T at 457). Dr. Kattur noted that Plaintiff's headaches were exacerbated by bright lights, movement, and coughing. (T at 457). According to Dr. Kattur, during the times Plaintiff has a headache, she would generally be precluded from performing basic work activities. (T at 459). Dr. Kattur also indicated that Plaintiff would need to take

unscheduled breaks of approximately 30 minutes in duration 3-4 times during the work day. (T at 459). Dr. Kattur opined that Plaintiff would likely be absent from work about four times a month due to her impairments. (T at 460). According to Dr. Kattur, Plaintiff had difficulty walking due to imbalance and problems standing due to back pain. (T at 460).

The Appeals Council referenced Dr. Kattur's RFC assessment on a list of exhibits that it considered before denying Plaintiff's request for review. (T at 4). However, the Appeals Council summarily dismissed the treating physician's opinion (along with the other additional evidence provided by Plaintiff) in a single sentence - "We found that this information does not provide a basis for changing the Administrative Law Judge's decision." (T at 2).

The Appeals Council's explanation of its decision was plainly inadequate and a remand should be ordered for reconsideration and further explanation.

Under the Social Security Act, a claimant may "submit new and material evidence to the Appeals Council when requesting review of an ALJ's decision." 20 C.F.R. §§ 404.970, 416.1470; see also Perez v. Chater, 77 F.3d 41, 44 (2d Cir.1996). To obtain a review of the additional evidence, the claimant must establish that "the proffered evidence is (1) new and not merely cumulative of what is already in the record, and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative." Sergenton v. Barnhart, 470 F.Supp.2d 194, 204 (E.D.N.Y.2007) (citing Lisa v. Sec'y of Health & Human Servs., 940 F.2d 40, 43 (2d Cir.1991)).

Evidence is "material" if there is "a reasonable possibility that the new evidence would have influenced the Secretary to decide claimant's application differently." Id. If the

Appeals Council fails to consider new, material evidence, "the proper course for the reviewing court is to remand the case for reconsideration in light of the new evidence." Shrack v. Astrue, 608 F. Supp.2d 297, 302 (D.Conn.2009).

In the present case, the Commissioner contends that the Appeals Council's summary dismissal of Dr. Kattur's opinion was proper because the assessment was rendered after the relevant time period, i.e., in March of 2011, seven (7) months after the ALJ's decision.

The Commissioner's argument is contrary to Second Circuit authority expressly holding that "medical evidence generated after an ALJ's decision cannot be deemed irrelevant solely because of timing." Newbury v. Astrue, 321 Fed.Appx. 16, 2009 WL 780888, at *2 n.2 (2d Cir. Mar. 26, 2009)(citing Pollard v. Halter, 377 F.3d 183, 193 (2d Cir.2004)). The categorical refusal to consider evidence solely because it was created after the date of the ALJ's decision is error. Pollard, 377 F.3d at 193 ("Although the new evidence consists of documents generated after the ALJ rendered his decision, this does not necessarily mean that it had no bearing on the Commissioner's evaluation of [the Claimant's] claims. To the contrary, the evidence directly supports many of her earlier contentions regarding [the] condition. It strongly suggests that, during the relevant time period, [her] condition was far more serious than previously thought"); see also Sergenton v. Barnhart, 470 F. Supp.2d 194, 204 (E.D.N.Y. 2007).

The Commissioner's argument is particularly inapposite in this case, where the Plaintiff's headaches arise from her cerebral aneurysm issues, which clearly were present during the relevant time period (in fact, the aneurysm impairment dates back several decades). Thus, it is not at all clear (or, indeed, even likely) that Dr. Kattur's assessment

related only to limitations arising after the ALJ's decision. Of course, any doubt the Appeals Council might have had regarding Dr. Kattur's opinion should have been resolved by re-contacting the treating physician. Thus, to the extent the Appeals Council implicitly rejected Dr. Kattur's assessment because it was generated after the ALJ's decision, that rejection (without further explanation or development of the record) was improper and contrary to Second Circuit precedent.

The Commissioner also contends that the Appeals Council was justified in rejecting Dr. Kattur's opinion because the treating physician's assessment was contradicted by the other evidence of record. Under the "treating physician's rule," the Commissioner must give controlling weight to the treating physician's opinion when the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[6]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, the Commissioner may nonetheless give it "extra weight" under certain circumstances. In this regard, the following factors should be considered when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5)

---

[6]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also de Roman, 2003 WL 21511160, at *9; Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998).

In this case, it appears the Appeals Council discounted the assessment provided by Plaintiff's treating physician, finding that it was not entitled to controlling weight. However, the Appeal Council did not provide any explanation or cite any evidence in support of its decision or state what weight, if any, it afforded to the treating physician's opinion. This was error and a remand is warranted.

"[W]here newly submitted evidence consists of findings made by a claimant's treating physician, the treating physician rule applies, and the Appeals Council must give good reasons for the weight accorded to a treating source's medical opinion." James v. Commissioner of Social Security, No. 06-CV-6180, 2009 WL 2496485, at *10 (E.D.N.Y. Aug. 14, 2009); Snell v. Apfel, 177 F.3d 128, 134 (2d Cir.1999)(holding that the Commissioner "is required to explain the weight it gives to the opinions of a treating physician"); 20 C.F.R. § 404.1527(d)(2) ( "We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.").

"Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." Snell, 177 F.3d at 134; see also Farina v. Barnhart, No. 04-CV-1299 (JG), 2005 WL 91308, at *5 (E.D.N.Y. Jan.18, 2005) (remanding for further proceedings where the Appeals Council failed to acknowledge receipt of new evidence from claimant's treating physician and failed to "provide the type of explanation required under the treating physician rule" when denying review)); Knepple-Hodyno v. Astrue, No.

12

11-cv-443, 2012 WL 3930442, at *9 (E.D.N.Y. Sep't 10, 2012)(remanding for further proceedings because the "Appeals Council provided no explanation as to why it did not give ... new evidence controlling weight"); Shrack v. Astrue, No. 3:08-CV-00168, 2009 WL 712362, at *3 (D.Conn. Mar. 17, 2009)("Importantly, the treating physician rule applies to the Appeal's [sic] Council when the new evidence at issue reflects the findings and opinions of a treating physician.").

Likewise, in this case, the Appeals Council was obligated to provide an explanation for its decision not to afford controlling weight to an assessment provided by Plaintiff's treating physician. The Appeals Council also should have explained what weight, if any, it was affording to the assessment and provided an explanation for its decision. No such explanations were provided. The summary statement that the additional information presented by Plaintiff did "not provide a basis" for changing the ALJ's decision is insufficient as it frustrates meaningful review by this Court and provides the Plaintiff with no material information to explain why Dr. Kattur's opinion was rejected. Stadler v. Barnhart, 464 F. Supp.2d 183, 188 (W.D.N.Y. 2006) (concluding that the Appeals Council erred by "fail[ing] to follow the requirements of the Commissioner's regulation in summarily concluding, without 'good reasons' stated, that the new evidence submitted by plaintiff's counsel to it was insufficient to disturb the ALJ's determination" (quoting Rice v. Barnhart, No. 03-CV-6222, 2005 WL 3555512, at *13 (W.D.N.Y. Dec. 22, 2005)).

The lack of a meaningful explanation by the Appeals Council is particularly troubling in this case. As noted above, the ALJ found it significant that the record did not contain any restrictions recommended by a treating doctor with regard to Plaintiff's headaches. (T at 21). The ALJ also supported his RFC assessment by pointing to the fact that the record did

not contain "any opinions from treating or examining physicians indicating that [Plaintiff] is disabled or even has limitations greater than those determined in [his] decision." (T 22). Plaintiff then supplemented the record by providing precisely the sort of evidence the ALJ found lacking, namely, an assessment by a treating physician indicating that Plaintiff had limitations greater than those determined in the ALJ's decision. The Appeals Council nevertheless concluded, without further explanation, that this new evidence did not provide a basis for changing the ALJ's decision. (T at 2). Under the circumstances, this sort of conclusory finding was plainly inadequate as a matter of law and clearly violated the applicable mandate to provide "good reasons" for discounting a treating physician's opinion.

Lastly, the Commissioner suggests that dismissal of Dr. Kattur's assessment was justifiable because the assessment was inadequately supported by clinical findings and treatment notes and based primarily on Plaintiff's subjective complaints. However, this explanation, even if true, is inadequate. Both the ALJ and the Appeals Council have an affirmative obligation to develop the administrative record. See Anderson v. Astrue, No. 07-CV-4969, 2009 WL 2824584, at * 15 (E.D.N.Y. Aug. 28, 2009)("The Appeals Council, like the ALJ, has an affirmative duty to develop the record."); Boyd v. Apfel, No. 97-CV-7273, 1999 WL 1129055, at *5 (E.D.N.Y. Oct.15, 1999) (remanding because Appeals Council did not seek out clarifying information with respect to report by treating physician); Joe v. Apfel, No. 97-CV-772, 1998 WL 683771 at *5 (W.D.N.Y.1998) (remanding because "Commissioner erred in failing to develop the record at the Appeals Council level of review").

"Given the ALJ's duty to develop the record sua sponte, the Appeals Council may not reject the treating physician's conclusions based solely on a lack of clear medical

evidence or inconsistency without first attempting to fill the gaps in the administrative record." Valerio v. Commissioner of Social Sec., No. 08-CV-4253, 2009 WL 2424211, at *11 (E.D.N.Y. Aug. 6, 2009)(internal citations omitted); see also Taylor v. Astrue, No. CV-07-3469, 2008 WL 2437770, at *3 (E.D.N.Y. June 17, 2008) (finding it error for the ALJ to not re-contact Plaintiff's treating physician when he determined that the physician's opinion was "not well-supported by objective medical evidence"). This duty existed notwithstanding the fact that Plaintiff was represented by counsel in connection with the request for review submitted to the Appeals Council.

Thus, to the extent the Appeals Council summarily dismissed Dr. Kattur's findings as inadequately supported, the Appeals Council erred by failing to fill in the gaps in the administrative record, by (for example) seeking further information regarding the underlying basis for his assessment and clarification concerning the extent to which the assessment was based on Plaintiff's subjective reports.

For the foregoing reasons, the Appeals Council's summary dismissal of an assessment provided by a treating physician was contrary to applicable law. As such, this Court recommends a remand for reconsideration of the Plaintiff's RFC, for compliance with the treating physician's rule (in particular, the obligation to provide "good reasons" for the weight assigned to treating physician's opinion), and for further development of the record.

    **b.    Credibility**

Courts in the Second Circuit have determined a claimant's subjective complaints are an important element in disability claims, and they must be thoroughly considered. See Ber v. Celebrezze, 333 F.2d 923 (2d Cir.1994). Further, if a claimant's testimony of pain and limitations is rejected or discounted, the ALJ must be explicit in the reasons for rejecting

15

the testimony. See Brandon v. Bowen, 666 F.Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F. Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....
>
> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

> 1. [Plaintiff's] daily activities;

16

> 2. The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
> 3. Precipitating and aggravating factors;
> 4. The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
> 5. Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
> 6. Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
> 7. Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F.Supp 604, 608 (S.D.N.Y.1987)).

The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of the symptoms were only "partially credible." (T at 19). Concerning Plaintiff's complaints of disabling headaches, the ALJ cited the lack of restrictions placed on Plaintiff by a treating doctor as a reason for discounting her credibility. (T at 21), This assessment should have been revisited by the Appeals Council in light of Dr. Kattur's RFC assessment, which was consistent with Plaintiff's complaints of disabling headaches. The question of Plaintiff's credibility should therefore be revisited on remand after further development of the record as outlined above.

**3.    Remand**

"Sentence four of Section 405 (g) provides district courts with the authority to affirm,

17

reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)). Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008).

Given the deficiencies in the record as outlined above and particularly in light of the Appeals Council's failure to provide good reasons (or, indeed, any reasons) for its apparent decision to discount Dr. Kattur's RFC assessment, it is recommended that the case be remanded for further proceedings.

## IV. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Commissioner's Motion be DENIED, that the decision of the Commissioner be reversed, and that the case be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405 (g) for further administrative proceedings consistent with this Report and Recommendation.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated: February 1, 2013
Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc.

v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

February 1, 2013

_____
Victor E. Bianchini
United States Magistrate Judge